

July 26, 2024

Hon. Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
VIA ECF ONLY

      Re:    *Shkolir, et. al v. RX2GO, Inc., et. al.;* 1:23-cv-7256-OEM-PK (EDNY)
            DEFENDANTS' OUTSTANDING DISCOVERY

Your Honor:

I represent the Plaintiffs in the above-referenced action.

### Relevant Procedural Background

On July 5, 2024, Plaintiffs filed a letter motion regarding Defendants' failure to produce data in advance of mediation. [Dkt. 31]. Defendants filed a letter response July 12, 2024. [Dkt. 33]. The Court issued a Minute Entry on July 19, 2024 asking Plaintiffs to respond to Defendants' assertion that they had produced the requested documents. These filings follow a series of filings and orders relating to Plaintiffs' contentions regarding lack of production of basic materials necessary for engaging in productive settlement discussions and mediation.

### Outstanding Discovery Requests

In regard to the "basic" discovery materials at issue (timekeeping, pay, tips, and deliveries made), following is a chart showing what has been produced in regard to each Plaintiff:

|  | Shkolir | | Badgaev | | Williams | | Badmaev | |
|---|---|---|---|---|---|---|---|---|
|  | Dates | Bates | Dates | Bates | Dates | Bates | Dates | Bates |
| Start Date of Work for Co (Est) | 8/1/17 |  | 1/1/21 |  | 11/1/21 |  | 12/15/19 |  |
| End Date of Work for Co (Est) | 9/13/22 |  | 4/1/21 |  | 8/1/22 |  | 7/1/21 |  |
| **Length of Work (Weeks)** | **267** |  | **13** |  | **39** |  | **81** |  |
| Summary Time Logs Start Date | 11/30/20 | D1 | 11/23/20 | D6 | 11/1/21 | D8 | 11/23/20 | D1252 |
| Summary Time Logs End Date | 9/18/22 | D5 | 1/24/21 | D7 | 8/7/22 | D10 | 3/7/21 | D1253 |
| **Duration of time logs (wks)** | **94** |  | **9** |  | **40** |  | **15** |  |
| Detail Time Logs Start Date | 12/4/20 | D86 | 11/27/20 | D15 | 11/4/21 | D729 | 11/23/20 | D1254 |
| Detail Time Logs End Date | 9/13/22 | D728 | 1/21/21 | D85 | 8/3/22 | D1251 | 3/3/21 | D1362 |

ANDERSONDODSON, P.C.
11 BROADWAY, SUITE 615 | NEW YORK, NEW YORK 10004
14143 DENVER WEST PARKWAY | SUITE 100-50 | GOLDEN, COLORADO 80401
TEL: (212) 961-7639 | FAX: (646) 998-8051
WWW.ANDERSONDODSON.COM

 July 26, 2024                                                                                                                         Page 2 of 3

| Duration of time logs (wks) | 93 | | 8 | | 39 | | 14 |
|---|---|---|---|---|---|---|---|
| Tips Logs Start Date | 12/9/20 | D11 | 12/5/20 | D13 | 11/12/21 | D14 | |
| Tips Logs End Date | 9/9/22 | D12 | 1/19/21 | D13 | 7/7/22 | D14 | |
| Duration of Tips Logs (wks) | 91 | | 6 | | 34 | | |
| Payment Logs Start Date | 11/23/20 | D1363-D1387 | 12/2/20 | D1388 | 11/13/21 | D1406 | |
| Payment Logs End Date | 9/2/22 | D1395-D1405 | 1/20/21 | D1394 | 6/18/22 | D1424 | |
| Duration of Payment Logs (wks) | 93 | | 7 | | 31 | | |

Stated in the converse, most egregiously, Defendants have not produced the following in regard to the above, nor any explanation as to why they have not been produced:
- Shkolir: Time or pay records for Aug. 2017-Nov. 2020; tip records For Aug. 2017-mid Oct. 2021
- Badmaev: Time records for the remainder of the approximately 1.5 years he worked for Defendants (only 14-15 weeks worth were produced); pay and tip records.

Defendants assert that there is no set "schedule" or similar as to how much the Plaintiffs should have received for each delivery made. If that doesn't exist, it doesn't exist. They have indicated that the rate per delivery was the product of a complex algorithm involving a number of factors. However, they've made no effort to produce what does exist instead that has bearing on this issue. What does exist, upon information and belief, was a stated rate for how much the drivers expected to receive per "route" (per shift, essentially), which very often differed from the amounts they were paid, after the fact. This information should be accessible through the Rx2Go app that the parties used for this and other purposes.

Relatedly, but not the same thing, Defendants have still produced no data or information for what each payment made consisted of. They have produced copies of checks that bear a dollar amount, and on the memo line the dates for the two week period the amount was for. Setting aside Plaintiffs' "bait and switch" argument (i.e. that they were told one rate before beginning the work and then paid a lower rate after the fact), when cross referencing the payments made with the Defendants' own daily time logs (that contain a dollar amount for that route), sometimes the math works, i.e. the amounts for each route in that two week period as stated on the time logs add up to equal the amount paid in a check. There are many occasions, however, when the math does not add up. As one example, D1380 is a check dated 7/8/22 with a memo line of "Service 6/20/22-7/5/22" for $2,086.82. D526-D547 are the trip logs for the same dates, and the total those logs show is for $2,119.32, for a difference of $32.50. This difference would seem to support Plaintiffs' argument that deductions were being made to their pay. However, Defendants have produced no records showing how their pay was tallied, equivalent to what one would expect to see on paystubs.



In regard to tips, Defendants have produced 4 pages of data, showing a grand *total* of 6 tips left for Plaintiff Badgaev, 20 for Williams, and 45 for Shkolir. These Plaintiffs were making 30-60 deliveries per day, six days a week (Shkolir for over 5 years). Even if not every delivery resulted in a tip, it strains credulity for there have been so few. Thus, this too appears to be a partial production.

Also, while it is in some ways a minor point, Defendants were ordered to produce data in "native" format. (See 5/17/24 minute order.) What they produced was in PDF format, which had the net result of Plaintiffs' counsel's team having to expend hours and hours converting that information into a useful form (i.e. a spreadsheet) that would not have been necessary if they had produced it in Excel format.

With the information that was provided, we did make extensive computations, as best we could, in advance of the July 23 mediation. As a result of the production the numbers exchanged were closer together than the night-and-day spread that had existed prior, but we were still too far apart to be able to reach a resolution. One can't help but wonder whether there would have been a different result had all of the relevant records been produced.

Thank you for your consideration.

Sincerely,

Penn Dodson, Esq.
*penn@andersondodson.com*