**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**ELLIE SHKOLIR, RASHAD WILLIAMS,**
**EVGENII BADGAEV,** and **SANGADZHI BADMAEZ,**
on behalf of themselves
and others similarly situated,

                      Plaintiffs,

v.

**RX2GO, INC.,**
**VICTORIA NYC I, INC.,** d/b/a Rx2Go, and
**ERKIN SATTAROV,** an individual,

                      Defendants.

Case No. 1:23-cv-7256-OEM-PK

<u>**JURY TRIAL REQUESTED**</u>

---

**FIRST AMENDED COMPLAINT**

COME NOW the Plaintiffs, pursuant to Fed. R. Civ. Proc. 15(a)(2), and with leave of Court, amend their Complaint to name an additional related Defendant, to include allegations related to an additional Plaintiff who has consented to join this action, and to include class and collective allegations. This Complaint shall supersede and replace all foregoing Complaints filed in this action to date.

<u>**INTRODUCTION**</u>

1.    Plaintiffs Ellie Shkolir, Rashad Williams and Evgenii Badgaev worked as full time couriers for Defendants' pharmaceutical delivery service for durations ranging from several months to several years. During this time they were underpaid relative to what they should have received in various ways. The arrangement was supposed to be that they would be paid on a "per delivery" basis, but the amount was a "moving target" as the app they used would say one amount before the route they were assigned and

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

another after it was completed. The company also withheld tips left by customers through the app. Defendants did not pay Plaintiffs anything extra for overtime when their hours exceeded 40 in the week. In addition, the company would make deductions to their pay for rule infractions such as $100 for failure to wear a face mask or a $200 "fine" for failure to deliver a package. Plaintiffs were also paid late in contravention of NYLL § 191.

2.      To challenge these and other wage violations, Plaintiffs bring this action, by and through their attorneys, against Defendants RX2GO, Inc., Victoria NYC I, Inc., d/b/a Rx2Go, and Erkin Sattarov, an individual, to recover unpaid or underpaid wages and other damages under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. (hereinafter "FLSA") and violations of several aspects of the New York Labor Law (hereinafter, "NYLL") and/or the New York City "Freelance isn't Free Act," and common law claims for breach of contract and unjust enrichment.

3.      Plaintiffs Ellie Shkolir, Rashad Williams, and Evgenii Badgaev further allege that Defendant violated the anti-retaliation provisions of the FLSA and/or NYLL by terminating them in response to their complaints regarding their pay.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of federal questions, 29 U.S.C. § 201 et seq. of the FLSA.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims by authority of 28 U.S.C. § 1367.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 2

6.      Venue lies with this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 201 et seq. Defendant's company is based at 6921 8th Ave, Brooklyn, NY 11228, making it a resident of Kings County.

## PARTIES

### Corporate Defendants

7.      Defendant **RX2GO, Inc.** is a New York corporation doing business within Kings County, whose principal place of business is located at 6921 8th Ave, Brooklyn, NY 11228.  Its DOS Process agent is listed with the NYS Department of State as Stan Gutkin with an address of 140 58th Street, Suite 8G, Brooklyn, NY 11220.

8.      Defendant **Victoria NYC I, Inc.** is a New York corporation doing business within Kings County, whose principal place of business is located at 6921 8th Ave, Brooklyn, NY 11228.  Its DOS Process agent is listed with the NYS Department of State as Victoria NYC I, Inc. at the same address.

9.      **RX2GO, Inc.** and **Victoria NYC I, Inc.** operate together to do business as Rx2Go.

10.    RX2GO operates a pharmaceutical delivery service. It holds its app out as helping connect consumers to their hometown independent pharmacy.

11.    At all relevant times, each entity had annual gross revenues in excess of $500,000.

12.    While Plaintiffs themselves are not privy to details of Defendant's financial information, online the website zoominfo.com lists the revenue of RX2GO, Inc. as "$6.9M." On the website LinkedIn, Defendant Sattarov posted a position for an HR Manager on September 10, 2023, listing the size of the company as "501-1,000 employees" which by logical inference suggests gross revenues far in excess of

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 3

$500,000. Similarly, the website buzzfile.com states, "Victoria Nyc I is estimated to generate $2.2 million in annual revenues, and employs approximately 35 people…"

13. At all relevant times, both corporate Defendants were engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

14. At all times material to this action, RX2GO was subject to the FLSA and was an "employer" of the Plaintiffs, as defined by § 203(b) of the FLSA.

**Defendant Erkin Sattarov**

15. Defendant Erkin Sattarov, an individual, resides at 6921 8th Ave, Brooklyn, NY 11228, Kings County, upon information and belief.

16. Defendant Sattarov is the CEO of RX2GO.

17. At all times material to this action, Defendant Sattarov actively participated in the business of the corporation.

18. At all times material to this action, Defendant Sattarov exercised substantial control over the functions of the company's workers including Plaintiffs.

19. Defendant Sattarov created and/or authorized policies affecting Plaintiffs' terms and conditions of work. For example, Defendant Sattarov had the authority to decide how much Plaintiffs would be paid, whether they were suitable to work for the company, and how violations of company rules should be handled.

20. At all times material to this action, Defendant Sattarov was an "employer" of the Plaintiffs, as defined by § 203(b) of the FLSA and NYLL.

21. Defendant Sattarov has an ownership interest in and/or is a shareholder of RX2GO.

22. Defendant Erkin Sattarov is one of the ten largest shareholders of RX2GO.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 4

**Plaintiffs**

23. Plaintiffs are all residents of Brooklyn, New York.

24. Plaintiff Shkolir worked for RX2GO as a medical courier for at least a couple years, ending September 13, 2022, or thereabouts.

25. Plaintiff Rashad Williams worked for RX2GO as a medical courier for about nine months, from November 1, 2021, to August 1, 2022, or thereabouts.

26. Plaintiff Evgenii Badgaev worked for RX2GO as a medical courier for about three months, from January 1, 2022, to April 1, 2022, or thereabouts.

27. Plaintiff Badmaez worked for RX2Go for about a year and a half, off and on, during the years 2019-2021.

28. In order to accomplish their work Plaintiffs used the company's RX2GO app. They would pick up packages from a warehouse in Brooklyn and then the app would tell them where to take it for delivery (such as to an end user's apartment).

29. Plaintiffs understood the pay arrangement to be that they would earn a certain amount per stop. The amount they were to receive was different depending on the characteristics of the delivery, but an example of an expected amount might be anywhere from $4 to $20 for a stop.

30. To the best of their memory Plaintiffs never received anything in writing from the company about how exactly the compensation would work, such as a schedule or chart.

31. Plaintiffs were generally paid by direct deposit or sometimes by a check or cash, but would not receive an itemization or breakdown of how their pay was calculated.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 5

32. Defendants issued Plaintiff Badgaev checks but then charged him a 10% fee for cashing his check for him. There would generally be a delay of 2-3 days between the time of the check being issued and him receiving the cash.

33. Plaintiffs did not give Defendants invoices for the work they had done; the amount of pay remitted was decided by Defendants.

34. Although sometimes payments might come late, typically Defendants paid Plaintiffs every other Friday.

35. Plaintiffs did not have the option to refuse to make a given delivery. Defendants assigned the couriers their deliveries for the day and they were expected to accomplish all of those deliveries.

36. In fact, when something happened that made it such that a delivery could not be accomplished, the company had a policy of penalizing the driver by making a $200 deduction to his pay.

37. At some point Plaintiff Shkolir noticed that the amount he would see in the app before the delivery, that he expected to receive, would be downwardly adjusted once he accomplished the delivery.

38. Similarly, Plaintiff Badgaev noticed that when he first received notice of the deliveries he was to make it would say $10 per delivery, but then at the end of the pay period this would be reduced to $3.50 instead.

39. As one example based on limited information to which he still has access, Plaintiff Badgaev on 11/30/2020 started work at 12:26 and finished at 23:45, for a shift time of 11 hours 19 minutes. During this time he made 30 deliveries. Each delivery shows a "payout" price of $4.00. 30 deliveries times $4 per delivery is $120 earned for the day.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 6

Assuming he in fact received that full amount, $120 divided by 11 hours 19 minutes is an effective hourly rate of $10.60.

40. Also, toward the end of his employment Plaintiff Shlokir learned that in the app customers could, and did, leave tips for the drivers. He never received these tips.  He raised the issue with Defendants, reiterating his inquiries over a period of about six months or so. The only response he got was "Accountant have not counted. Remind me tomorrow."

41. Shortly after Shkolir made these inquiries, Defendants stopped assigning him work.

42. Plaintiff Williams also had a text exchange with a supervisor, Shoxa Mamatov, about tips, as follows:

> **Williams**: And I want all my money
> **Mamatov**: so u will get paid
> **Mamatov**: when the salary will be
> **Williams**: tips and all
> **Mamatov**: talk to bk office

43. Further, not all payments cleared. For example, on December 2, 2021, Plaintiff Williams experienced a return chargeback of $2,141.80 that Defendants had paid to him, which, even though they repaid him this amount of December 6, caused him to incur a deposit return fee of $20 and an overdraft fee of $35.

44. While working in this capacity, Plaintiffs were not expected to record time worked. They would log in to the app to do their job, but not for time tracking purposes per se.

45. Plaintiffs worked full time plus hours, certainly more than 40 hours most if not all weeks.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 7

46. Because they were not paid on an hourly basis and were not expected to log their start and stop times Plaintiffs focused their attention more on the deliveries they were making than they did to how many hours they were working.

47. Shkolir typically worked six days per week, generally starting at around 8:00 AM and continuing his work until all of his assigned deliveries were made. While his end times varied, it was not uncommon for him to keep working until 10:00 or 11:00 at night.  On a typical day he would be expected to make deliveries to approximately 12-13 different locations, and on average each delivery would take more than an hour to accomplish, due to the combination of the distance of the drive, traffic, finding parking, making the delivery, and making entries on the app. While most of the deliveries were in the five boroughs, some were outside of that radius. Because the deliveries were not scheduled to be made during particular time blocks within a day but rather were just to be accomplished as soon as possible, Plaintiff would make his deliveries continuously throughout the day; he generally did not have a gap of time in the middle of the day during which he was not making deliveries.  Putting all this together, Plaintiff Shkolir estimates that while there were some time periods when his workweeks may have been as little as around 45 hours or as much as 95 hours, on average he would estimate that he was working 12 hour days 6 days a week, for a total of 72 hours a week.

48. Similarly, though their durations of work for the company were shorter, Plaintiffs Williams and Badgaev would work similar quantities of hours in a given workweek. They too would work six days a week, starting their workdays at between 7:00 to 9:00 in the morning and work continuously until their assigned deliveries were finished,

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 8

typically around 12 hours later, or more. These Plaintiffs also currently estimate their workweeks to be about 72 hours a week.

49. Following are examples of specific workweeks in which Plaintiffs worked in excess of 40 hours. The times below reflect the time between the first delivery and the last delivery for each route (with the drivers performing more than one route in these examples), and does not include compensable time beginning when the driver went to the warehouse at the start of the shift and/or end of shift, nor the time between when one route ended and the next one began, some or all of which was also time worked:

   a. Badgaev: 11/30/2020-12/6/2020 worked at least 44.59 hours (2 routes)

   b. Badmaez: 12/13/2020-12/19/2020 worked at least 53.09 hours (2 routes)

   c. Shkolir: 8/15/2022-21/2022: worked at least 52.70 hours (4 routes)

   d. Williams: 6/27/2022-7/3/2022 worked at least 49.91 hours (4 routes)

50. Defendants did not pay Plaintiffs anything extra as overtime premium pay when they worked more than 40 hours in a week.

**FLSA Collective Plaintiffs**

51. Plaintiffs bring the First Claim for Relief (FLSA Claims) as a Collective Action pursuant to 29 U.S.C. § 216(b), on behalf of all delivery drivers who worked for the Defendants on or after the date three years before the filing of the instant Complaint, in any location (the "FLSA Collective Plaintiffs").

52. Upon information and belief, all of the Defendants' drivers are not paid overtime premium pay when they work more than 40 hours a week, have a common or substantially similar job descriptions and duties, and are subject to common or substantially similar policies and procedures.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 9

53. The FLSA Collective Plaintiffs are similarly situated, in that they have had substantially similar job duties and have been subject to common pay practices and decisions on the part of the Defendants.  The FLSA claims of the Named Plaintiffs alleged herein are essentially the same as those of the other FLSA Collective Plaintiffs.

54. The identities of the individuals comprising the FLSA Collective are, or should be, readily ascertainable from Defendants' records.  Notice can be provided to the FLSA Collective Plaintiffs via methods approved by the Court.

**Rule 23 Class**

55. The Named Plaintiffs bring the Second, Fifth, and Sixth Claims for Relief (NYLL, FIFA, and contract claims) as a Class Action pursuant to Fed. R. Civ. Proc. 23, on behalf of all drivers who worked for Defendanst on or after the date six years before the filing of the instant Complaint within the state of New York  (the "New York Class Plaintiffs").

56. The number of, and identities of, the individuals comprising the New York Class are, or should be, readily ascertainable from Defendant's records.  Notice can be provided to the New York Class Plaintiffs via means permissible under FRCP 23, correlative caselaw, and appropriate judicial guidance.

57. The precise number of persons is unknown, as such information is in the custody and control of the Defendants.  However, upon information and belief, there are easily more than fifty (50) individuals in the proposed Class.

58. The proposed Class is so numerous that joinder of all members is impracticable.  Further, the disposition of their claims as a class will benefit the parties and the Court.

59. The Named Plaintiffs' claims are typical of those claims which could be alleged by any member of the class.  Further, the relief sought by the Named Plaintiffs is typical of the

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 10

relief which could be sought by any member of the proposed Colorado Class. The Class members were all subject to the same practices, decisions, policies, plans, and customs of Defendant as alleged herein. There was nothing special about the Named Plaintiff that caused her to be treated differently than other Class members in regards to the pay methods to which they were subjected. Defendant benefitted from the unlawful withholding of wages due to members of the proposed Class and the Named Plaintiff in the same way. Though the exact amounts may differ, Plaintiff and other Class members incurred similar losses, injuries, and damages arising from Defendants' pay practices.

60. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Further, Plaintiffs are represented by attorneys who are experienced and competent in class/collective action litigation, employment litigation, and wage and hour employment litigation in particular.

61. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. In wage and hour litigation involving low wage workers in particular, the individual Class members more often than not lack the financial, language, time, and other resources to vigorously prosecute a lawsuit against Defendants having a superior bargaining positions. A class action will allow those similarly situated to prosecute their common claims together and minimize the need for duplicative efforts expended on their behalf. Though important and significant to Class members individually, the damages suffered by each of the individual Class members are relatively small relative to the costs associated with litigation; pooling them together therefore serves the end of efficiency.

62. In addition, important public interests will be served by treating this claim as a class action. Otherwise, there is a risk that some workers would be compensated according to

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 11

the law and others not, resulting in a net benefit to Defendant for those who were improperly paid but for whom no damages are assessed.

63. Further, many current and even former employees understandably fear untoward repercussions for asserting claims on their own.  They therefore sometimes tolerate illegal treatment as an alternative preferable to having no job at all when in fact the Colorado requires proper and legal wage payments regardless of what some individuals may acquiesce to when faced with desperation and vastly unequal bargaining power positions.  Class actions allow these unnamed workers to rest in their anonymity while seeing their rights vindicated.

64. There are questions of law and fact common to the Class that predominate over questions affecting class members individually.  Some of these questions may include the following:

    a.  Whether drivers have been improperly classified as independent contractors;

    b.  What Defendants' pay policies, practices, directives, instruction, programs, and procedures were for all relevant times;

    c.  Whether drivers are owed overtime pay;

    d.  Whether Defendants underpaid the drivers for the trips that they made;

    e.  Whether Defendants provided written contracts to the drivers in compliance with FIFA;

    f.  Whether Defendants' conduct was willful;

    g.  Whether Defendants maintained true and accurate records; and

    h.  What formulae are appropriate for calculating damages.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 12

## **LEGAL CLAIMS**

**As And For A First Cause of Action:**
**FAIR LABOR STANDARDS ACT (FLSA) VIOLATIONS**

65. Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

*Failure To Pay Overtime*

66. Plaintiffs regularly worked more than 40 hours a week for Defendants.

67. Following are examples of workweeks in which the Plaintiffs worked more than 40 hours a week based on Defendants' records showing the first delivery of the day to the last delivery of the day, not even counting the time outside of that such as the time between when they reported to headquarters at the start of their shift in order to receive their route and the medicines they would be delivering for the day:

     a.   Badgaev: Jan 11-17, 2021:  47.80 hours

     b.   Badmaev: Dec. 13-19, 2020: 53.09 hours

     c.   Shkolir: Nov. 18-24, 2021: 51.01 hours

     d.   Williams: Jun. 27-Jul .3, 2022: 49.91 hours

68. Defendants paid Plaintiffs a flat rate based on the delivery or route. Defendants did not compensate Plaintiffs at a rate of one and one half times their "regular rates" for all hours over 40 worked in a workweek; Defendants did not pay any kind of extra premium for work performed after 40 hours in the week.

69. Defendants have been wrongfully classifying Plaintiffs as if they were independent contractors when in fact they were an "employees" as defined by the FLSA.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 13

70. The kind of work that Plaintiffs performed is part of the company's normal business operations and services it renders.

71. Defendants assigned work to Plaintiffs. Failure to complete the work they had been assigned could result in disciplinary measures.

72. Defendants decided the amount they would pay Plaintiffs. Plaintiffs did not remit invoices.

73. Defendants required Plaintiffs to wear a name badge that had the company name on it.

74. While working for Defendants, Plaintiffs did not also work for other companies or entities.

75. Plaintiffs usually worked for Defendants more than 40 hours a week, typically 6 days a week.

76. Defendants paid Plaintiffs on a biweekly basis.

77. When Plaintiffs began working for Defendants, no specific duration was given for how long they would be working for the company.

78. Plaintiffs did not utilize specialized or unique skills in order to perform their duties working for Defendants.

79. At all times material to this action, the Plaintiffs were in fact "employees" within the meaning of 29 U.S.C. § 203(e).

***Improper Tip Retention***

80. Customers sometimes left tips through the Rx2Go app.

81. Defendants did not remit the tips that customers left to the drivers.

82. Defendant improperly retained gratuities received on behalf of the Plaintiffs and others similarly situated.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 14

*Late Payments*

83. On at least some occasions, Plaintiffs did not receive their pay on the prescribed paydays.

84. Because the employer failed to pay wages or overtime on the regular payment date, Plaintiffs are entitled to liquidated damages.

***Willful & Not Based On Good Faith & Entitlement to Damages***

85. At all relevant times, Defendants failed to make, keep, and preserve accurate records regarding the wages, hours, and other conditions of employment of Plaintiffs, in contravention of the FLSA and affiliated Regulations, 29 U.S.C. §§ 211(c), 215(a)(5) and 29 C.F.R. § 516.

86. Defendants had no good faith basis for believing that their pay practices as alleged above were in compliance with the law.

87. The foregoing conduct constitutes a "willful" violation of the FLSA, 29 U.S.C. § 255(a).

88. As a result of the violations by Defendant of the FLSA, the Plaintiffs and others similarly situated are entitled to all damages available under the FLSA which include, but are not limited to, all unpaid or underpaid overtime and tips, as well as liquidated damages or interest, attorney fees, costs, as set forth in the FLSA, more specifically 29 U.S.C. § 216(b).

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 15

**As And For A Second Cause of Action:**
**NEW YORK LABOR LAW (NYLL) VIOLATIONS**

89. Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

90. At all relevant times, Plaintiffs were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

*Failure To Pay Overtime*

91. Defendants failed to compensate Plaintiffs at a rate of one and one half times their regular rates for hours over 40 in a workweek, in contravention of N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

*Failure To Pay Owed Wages*

92. Defendants paid Plaintiffs based on the delivery or route consisting of multiple deliveries.

93. At the start of a shift, the Plaintiffs would receive their assigned route along with a dollar figure for how much they would earn upon completing that route.

94. However, the amount that they would actually receive was less than the amount that they agreed to receive. For example, for May 23, 2022, Plaintiff Williams expected to receive $312 but instead was paid $287. For May 24, 022, he expected to receive $454 but instead received $280.

95. Defendants did not communicate to the Plaintiffs how or on what basis the delivery payments were computed.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 16

***Improper Deductions***

96. The Defendants made deductions from the wages of Plaintiffs other than those authorized under NYLL § 193.  <u>See also</u> 12 N.Y. Comp. Codes R. & Regs. 142-2.10

97. Specifically, Defendants made deductions to Plaintiffs' compensation for rule infractions such as $100 for failure to wear a face mask or a $200 "fine" for bringing undelivered packages to the office when they were not supposed to.

***Improper Tip Retention***

98. Defendant demanded or accepted some part of gratuities received by or on behalf of the Plaintiffs, in contravention of NYLL § 196-d.

***Failure To Pay Wages At Prescribed Frequency***

99. If Plaintiffs were "manual workers" as that term is defined in NYLL § 190(4) they should have been paid on a weekly basis.

100.    If Plaintiffs were a "clerical [or] other worker" as that term is defined in NYLL § 190(7) they should have been consistently paid on regular paydays designated in advance by the employer not less frequently than semi-monthly. NYLL § 191(1)(d).

101.    On at least some occasions, Plaintiffs did not receive their pay on the prescribed paydays.

102.    Because of these untimely payments, Plaintiffs were not consistently paid at regular intervals, nor was there any agreement in place as contemplated by NYLL § 191(1)(a)(ii).

***Failure to Provide Pay Stubs / Wage Notices***

103.    Defendant failed to furnish Plaintiffs with a "wage notice" containing the rate or rates of pay and basis thereof, whether paid  by  the  hour, shift, day, week, salary,

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 17

piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, in contravention of NYLL § 195(1)(a) and § 198(1)(b)

104.    Defendant failed to furnish Plaintiffs with "pay stubs," or a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of NYLL § 195(3), § 198(1)(d) and 12 N.Y. Comp. Codes R. & Regs. 142-2.7.

105.    Defendants' failure to issue the wage notice and paystubs caused the Plaintiffs harm. The lack of information deprived them of the ability to compare the amounts they were receiving with what they should have received. If they had been better informed about what they would actually be receiving for their work, they might not have continued working for the company as long as they did.

***Record-Keeping Failures***

106.    At all relevant times, Defendant failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of NYLL § 661.

107.    At all relevant times, Defendant failed to establish, maintain and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee, in contravention of NYLL § 195(4) and 12 N.Y. Comp. Codes R. & Regs. 142-2.6.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 18

108.    Defendant failed to keep a time book showing the names and addresses of its employees and the hours worked by each of them in each day, in contravention of NYLL § 161(4).

**Damages**

109.    Due to Defendant's New York Labor Code violations, Plaintiffs and others similarly situated are entitled to recover their unpaid wages, overtime, liquidated damages, interest, reasonable attorneys' fees, and costs associated with bringing the action.  NY Lab. Code § 663(1).

### As And For A Third Cause of Action: FLSA – RETALIATION

110.    Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

111.    Plaintiff Shkolir inquired and/or complained about not receiving tips to an agent of Defendant named Tamerlan, and then also spoke to his boss, Erkin Sattarov, about it.

112.    Despite his inquires, Plaintiff Shkolir never received tips customers had left for him though the app.

113.    Instead, in response, Defendants stopped assigning Plaintiff Shkolir deliveries to make.

114.    Similarly, Defendants stopped giving Plaintiffs Rashad Williams and Evgenii Badgaev routes in response to their complaints regarding their pay.

115.    By complaining about the propriety of these pay practices to Defendants, Plaintiffs engaged in activity protected under the FLSA.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 19

116.    Plaintiffs' cessation of work assignments (essentially a *de facto* termination) was an adverse employment action.

117.    Plaintiffs' termination from employment was causally connected to their inquiries regarding their pay.

118.    Defendants violated the provisions of Section 15(a)(3) of the FLSA (29 U.S.C. § 215(a)(3)), by discriminating against Plaintiffs for exercising rights protected under the Act.

119.    As a result of these violations by Defendants of the FLSA, the Plaintiffs are entitled to damages as set forth in the FLSA, more specifically 29 U.S.C. § 215(a)(3), in an amount to be determined at trial.


**As And For A Fourth Cause of Action:**
**NYLL – RETALIATION**

120.    Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

121.    Defendants violated the provisions of NYLL § 215 by retaliating against Plaintiffs for exercising protected rights.

122.    As a result of these violations by Defendants of the NYLL, Plaintiffs are entitled to damages as set forth in the NYLL, more specifically NYLL § 215(2), in an amount to be determined at trial.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 20

**As And For A Fifth Cause of Action:**
**FREELANCE ISN'T FREE ACT ("FIFA") VIOLATIONS**

123.  Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

124.  Plaintiffs performed work for Defendants within New York City.

125.  Plaintiffs contend they were "employees" subject to the protections of the FLSA and/or NYLL. However, in the alternative, in the event Plaintiffs were to be found to have been "independent contractors," they would be entitled to the protections of the "Freelance Isn't Free Act" (FIFA), NYC Admin. Code § 20-927*ff*.

126.  Plaintiffs' work occurred primarily within the five boroughs of New York City.

127.  Defendants failed to provide Plaintiffs a written contract in conformance with the requirements of § 20-928.

128.  Defendants engaged in unlawful payment practices as defined by § 20-929.

129.  For these violations Defendants are liable for the damages set forth in § 20-933, including owed compensation, liquidated damages, statutory damages, attorney fees, and costs.


**As And For A Sixth Cause of Action:**
**BREACH OF CONTRACT/UNJUST ENRICHMENT**

130.  Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 21

131.    Plaintiffs agreed to perform certain functions for Defendants, in exchange for compensation.

132.    By failing to pay Plaintiffs the correct amounts, Defendants breached their contracts with Plaintiffs.

133.    In the alternative, were a formal contract not found to exist, Defendants have been unjustly enriched by withholding monies that rightfully belong to Plaintiffs. Defendants are liable to Plaintiffs in the amount of compensation unlawfully withheld from them, and other appropriate damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(A)    Certify Count I as a Collective Action pursuant to 29 U.S.C. §216(b); and

(B)    Certify Counts II, V and VI as a Class Action pursuant to Fed. R. Civ. Proc. 23; and

(C)    Award Plaintiffs unpaid and underpaid wages due under the FLSA and the New York Labor Law;

(D)    Award Plaintiffs liquidated damages in the amount of their unpaid FLSA wages pursuant to 29 U.S.C. § 216(b);

(E)    Award Plaintiffs liquidated damages pursuant to NYLL § 663;

(F)    Award Plaintiffs appropriate damages for the retaliatory acts taken against them, including back pay, front pay in lieu of reinstatement, emotional distress, other appropriate actual, general, or compensatory damages, and punitive damages, in an amount to be determined at trial;

(G)    Award Plaintiffs FIFA damages as set forth in NYC Admin Code § 20-933;

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 22

(H)    Award Plaintiffs appropriate breach of contract and/or unjust enrichment damages;

(I)     Award Plaintiffs interest;

(J)     Award Plaintiffs the costs of this action together with reasonable attorneys' fees; and

(K)    Award such other and further relief as this Court deems necessary and proper.


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Respectfully submitted, this ____ day of **August, 2024.**

ANDERSONDODSON, P.C.

**Penn A. Dodson (PD 2244)**
*penn@andersondodson.com*
11 Broadway, Suite 615
New York, NY  10004
(212) 961-7639

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK (EDNY)

Second Amended Complaint
Page 23