AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.SunnySideLaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**Ellie Shkolir, Rashad Williams,** and **Evgenii Badgaev,** and **Sangadzhi Badmaez,** on behalf of themselves and other similarly situated,

                Plaintiff,

v.

**RX2GO, Inc., Victoria NYC I, Inc.,** d/b/a **RX2GO,** and,
**Erkin Sattarov,** an individual,

                Defendants.

Case No. 1:23-cv-7256-OEM-PK

---

### DECLARATION OF PENN DODSON, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR ANDERSONDODSON, P.C. FIRM'S ATTORNEY'S FEES AND COSTS

---

1. I am at least 18 years old, am competent to write this declaration, and am giving this declaration on the basis of personal knowledge of facts and circumstances stated herein.

2. I represent the Plaintiff(s) in the above-captioned action. I am familiar with the time I have personally devoted to it and have directed subordinates to expend on it.

**Personal Background and Qualifications**

3. **Admissions**. I am an attorney authorized and licensed to practice law in the states of Georgia (since 2003), New York (since 2009), and Colorado (since 2020). I am admitted to practice in the Tenth, Eleventh, and Second Circuits; Eastern and Southern Districts of New York; Middle and Northern Districts of Georgia; District of Colorado; and Georgia, Colorado, and New York state courts.

4. **Education**. After growing up in Arkansas, I went to Dartmouth College in New Hampshire. There, I received my BA, double major, *magna cum laude* with honors in the major, in 1997. My favorite college jobs were serving as a Teaching Assistant for Symbolic Logic (in philosophy, one of my majors) and as a writing tutor in the Writing Composition Center. A few years later I went to law school in California, and I received my JD in 2003 from Hastings College of the Law in San Francisco. There

I was an assistant managing editor for the women's law journal and a volunteer at the Legal Aid Society's Employment Law Center.

5. **Law Practice**. I have been practicing in the field of employment law almost exclusively since receiving my bar license in 2003. Prior to and during law school, I also worked in various capacities (law clerk, paralegal, etc.) in several employment law firms, on behalf of both employees and management, off and on from 1994-2003.

6. **Area of Focus**. Although I have in times past handled other kinds of employment law cases, currently my focus is almost exclusively on wage and hour law, particularly the FLSA, Colorado Wage Acts, and New York Labor Law. I have managed hundreds of wage and hour cases in the Eastern and Southern Districts of New York, District of Colorado, Middle and Northern Districts of Georgia, and state courts. Many of these involved multiple plaintiffs and/or class/collective claims, but many are on behalf of individual or small groups of plaintiffs.

7. **Awards**. I have been rated AV Preeminent® by Martindale-Hubble. I have been named a Super Lawyer for the New York Metro region in the field of Employment Law, and also among The Top Women Attorneys in New York, each year from 2013 to the present. I have received a number of "endorsements" as an employment law practitioner from well-respected colleagues on LinkedIn.com and Avvo.com and have received positive reviews from clients as well on public websites such as Google, Avvo.com and Facebook.

8. **Organizations**. My peers elected me 2007 President of the National Employment Lawyers Association, Georgia Affiliate (NELA-GA), a state-wide plaintiff-side employment lawyers' organization. I was a member of NELA-GA from 2004 through 2010 and was a board member of NELA-GA from 2005-2008. I was a member of NELA-NY in 2010-11 and was a member of the national organization, NELA, from 2005 to 2011. Through these organizations I chaired, presented in, and attended a number employment law Continuing Legal Education programs. In Colorado I have been a member of the Collaborating Attorney Network of the wage theft organization Towards Justice since approximately 2017.

9. **Significant Cases**. In *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 117 (2d Cir. 2015) I argued for, and obtained, a change in Second Circuit law. Bolstered by the amicus support I had sought out from the DOL, EEOC, and a handful of nonprofit organizations, I obtained an opinion overruling previous Second Circuit precedent that had held that in order to constitute a "filing" for the purpose of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), a complaint had to be formally made to a court of the DOL. In *Greathouse* we established that oral, internal complaints (such as to a supervisor) can serve as protected activity. In *Fernandez v. Clean House*, No. 17-1230 (10th Cir. 2018) my firm achieved a reversal of a district court decision dismissing two of three of our clients' claims on the basis that they had left the Defendants' employ more than two (but less than three) years before the filing of the lawsuit. We successfully argued that argued the statute of limitations was an affirmative defense which they did not need to anticipate in their complaint by alleging willfulness, and, in any event, our allegations regarding

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.SunnySideLaw.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK

Atty Declaration in Supp of Motion to Atty Fees
Page 2

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.SunnySideLaw.com

Defendants' willfulness was adequate. My young associate Alex Gastman was primary on the appeal; I was on the brief and heavily participated in its completion.

10. **Client Feedback**. Clients are frequently very kind in expressing their satisfaction with my representation, unsolicited. Here are a few examples of excerpts of emails I have received: "Thank you Ms. Dodson in demonstrating to me that you are both a master and exemplary practitioner[2] of the art of the law. Never before have I seen such dedication and excellence of service. I thank you and wish you luck in all your future endeavors."; "I just want to say that you have made me very comfortable with this entire process. That is no small feat. Thank you for that."; "And thank you Penn. I am really glad that I found you to represent us and was able to meet with you. I think I made the right decision."

11. **Previous Jobs**. After practicing employment law in Georgia for several years, I accepted a position with the law firm of Goldberg & Dohan from January 2010 until October 2012. In 2010, my responsibilities included opening a new office in New York for the Florida-based firm in an area of practice new to the firm and handling a new caseload "from scratch". In 2011, I had the additional responsibilities of overseeing the work of 1-2 attorneys and 2-4 support staff locally and, to a lesser degree, others out of state. While Goldberg & Dohan did not have formal titles for different experience levels for its attorneys, my responsibilities increased to those which I would equate to those of a junior partner.

12. **Current Role**. In late 2012, I founded my own law firm business, AndersonDodson, P.C., where I focus my practice on pursuing and recovering unpaid and underpaid wages to which employees are entitled, in Colorado, New York, and Georgia.

13. **Hourly Rates**. Most of my work I do on a contingency basis. For most cases the arrangement is that we are to receive the larger of a) 35% of the total recovery b) our hourly time as expended or c) a minimum fee of $3,000. As stated in our standard retainer agreements, my hourly rate through 2024 was $450. Beginning in 2025 it went to $475. In the firm in general we bill paralegal time at $125-$195 per hour. While most of my cases are contingency, I do perform some non-contingency work (e.g. employment contract reviews). For those services, I charge a flat fee or a hybrid fee (flat fee plus some percentage of a specified successful result). These are generally in the $500-$3,000 range usually. The least expensive offering I have is a very basic employment contract review, costing $500, usually involving 30-45 minutes of my time, and sometimes resulting in the client hiring me for additional work. I have created systems and automation around this offering to minimize the amount of time I have to expend on any one case, while still delivering a high-quality experience for the client at an affordable price.

## Other Team Members' Background, Qualifications, Roles, and Functions In The Case

14. **Overview**. Penn Dodson was lead counsel throughout the case. A lead paralegal was assigned to the case at all times; who that was changed over time given the duration of the case. Others participated in more limited fashion. For example, other paralegals assisted in various ways such as covering when the lead paralegal was out or handling a task that they had a particular skill or extra time with which to assist.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.SunnySideLaw.com

15. **William Castelli**. Mr. Castelli graduated from The University of Colorado Law School in June, 2023. He received a B.A. in economics from Sarah Lawrence College in 2013. During law school he clerked for state court judge Michael A. Martinez in Denver County and for U.S. Magistrate Judge Kristin L. Mix in federal court. After law school he worked as a compliance investigator for the Colorado Department of Labor for about a year and then joined the firm in May, 2024. Although he had passed the New York bar exam in 2023, after having relocated from Colorado to New York, he was sworn in to become a member of the New York bar in September, 2024

16. **Lucy Espinal**. Ms. Espinal has been a paralegal for over twenty-five years, having received her paralegal certificate from the Academy of Medical Arts and Business in Harrisburg, Pennsylvania. She came to this firm after having about 17 years of experience in an employment firm in Pennsylvania. She has worked for this firm since June 5, 2023. For this matter she has served as a senior paralegal after the case was reassigned to her.

17. **Jessica Balint.** Ms. Balint received her B.A. in both English and Art in May 2010 from the University at Albany in Albany, New York. She has been working as a Paralegal since March 2022, and worked for the firm from January 2023 to June 2024.

18. **Callyn Carter**. Ms. Carter graduated from the University of North Georgia in 2021 with a degree in Communication. She has been working for the firm since July 9, 2021 and her responsibilities have grown over the course of her tenure with the firm. For these purposes she serves as a paralegal.

19. **Brissa Chavez.** Ms. Chavez received her B.A. in Political Science in December 2019 from Metropolitan State University of Denver in Denver, Colorado. She has been working as a New Client Specialist at the firm since September 2022.

**<u>Efforts</u>**

20. Data pulled from our case management software is attached hereto regarding the firm's logged activities related to this matter. These entries contain day by day data of efforts made by my firm in relation to this case. Below is a recitation of events occurring on the court docket.

21. After receiving preliminary information about Plaintiff Ellie Shkolir and his claims in November 2022, I directed that further information be obtained. Next, the firm's intake paralegal went through an extensive questionnaire with him that I designed to gather additional background information about the Plaintiff himself, the company, its owners, the work performed, how time was kept, how he was paid, etc. Our staff also coordinated the logistics for, and then collected documents the Plaintiff had related to his employment with the Defendants.

22. In March 2023, we received preliminary information about Plaintiffs Rashad Williams and Evgenii Badgaev and their claims and I directed that further information be obtained on them as well. The firm conducted the same extensive intake gathering information on the two additional Plaintiffs.

23. At this point, I reviewed the information that had been gathered, analyzed it to determine the specific claims at issue and what further information was needed, and conducted background searches on the corporation and owners. Next, I had a lengthy conversation with the Plaintiff. I invited the Plaintiff to become a client and described the nature of the attorney-client relationship. The paralegals then ensured that the signed retainer agreement and other internal paperwork was in order, and they set up both electronic and paper case files.

24. Once the matter was open, we first attempted to reach out to the Defendants by sending demand letters explaining the claims. The first letters were sent via US Certified mail on June 8, 2023. My firm did not receive a response, so I had my paralegals send out additional demand letters on June 23, 2023, and July 5, 2023.

25. After prolonged efforts to try to negotiate outside of filing of the original pleading, and after conferral with Plaintiffs, the firm made the decision to move forward with filing Plaintiffs' claims in court. Attached are copies of the legal services agreement authorizing this move into formal proceedings. This step in the case consisted of paralegals then attorneys drafting the Complaint, overseeing the preparation of its accompanying documents and ECF filing, and supervising the support staff team's efforts to ensure that the Complaint was filed and prepared for service.

26. The original Complaint was filed on September 28, 2023. Dkt. 1.

27. My firm hired a process server and Erin Sattarov, father of Erin Sattarov, was served via service of process by Christopher Lemerise, of Seagull Legal Services Inc., on October 19, 2023.

28. On October 23, 2023, an attorney entered their appearance on behalf of the Defendants and filed Defendants' Answer to Complaint. [Dkts. 8, 9].

29. On January 3, 2024, Plaintiff's filed a Stipulation to FLSA Conditional Certification, along with the proposed Notice and Consent Form. [Dkt. 12].

30. On January 25, 2024 Counsel for the Plaintiff filed a Proposed Discovery Plan/Scheduling Order Case Management Plan, which was approved on January 31, 2024. [Dkts. 13, 16]

31. On January 31, 2024, counsel for the Plaintiff attended an Initial Conference Hearing.

32. On February 28, 2024, Plaintiffs' counsel filed a Motion to Extend Time to Amend Complaint in response to Defendants' motion to dismiss. [Dkts. 15, 18].

33. Counsel for Plaintiff filed a Motion for Leave to Amend Complaint on March 8, 2024, to address the issues raised on Defendants' letter motion to dismiss Plaintiffs' Complaint. [Dkt. 20].

34. On March 15, 2024, counsel for Plaintiff filed the Amended Complaint. [Dkt. 22].

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.SunnySideLaw.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK

Atty Declaration in Supp of Motion to Atty Fees
Page 5

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.SunnySideLaw.com

35. On March 19, 2024, Plaintiffs' counsel filed a Response to Defendants' Pre-Motion Conference Request. [Dkt. 23].

36. Plaintiff's counsel prepared and filed a Joint Motion to Adjourn Conference and for Clarification on the Court's Order of March 21, 2024. [Dkt. 24]

37. We issued discovery requests, engaged in conferral regarding deficiencies and disputes, and on April 30, 2024, counsel for Plaintiff filed a Request for Pre-Motion Conference regarding discovery deficiencies. [Dkt. 26].

38. On May 6, 2024, Plaintiffs' counsel filed a Response to Defendants' Second Pre-Motion Conference Request. [Dkt. 27].

39. A pre-motion conference was held on May 17, 2024.

40. The case was ordered to mediation and on May 30, 2024, Plaintiffs' counsel filed a Motion to Extend Time to Complete Mediation. [Dkt. 29].

41. Plaintiffs' counsel met with an additional Plaintiff, and Sangadzhi Badmaev, and his Consent to Join was filed on June 19, 2024. [Dkt. 30].

42. Plaintiffs' counsel and firm continued sending emails and requests to counsel for Defendants to get their discovery responses.

43. On July 5, 2024, Plaintiffs' counsel filed letter motion regarding discovery deficiencies for Defendants' failure to produce data in advance of mediation. [Dkt. 31].

44. On July 23, 2024, the parties, counsel for Defendants, and I participated in a private mediation session with Mediator Robert Kheel, but no settlement was reached. Plaintiffs' counsel prepared and filed the results of the mediation on July 25, 2024. [Dkt. 34].

45. On July 26, 2024, Plaintiffs' counsel filed a reply to Defendants' response to our letter motion regarding discovery deficiencies. [Dkt. 35].

46. A phone conference was held on August 2, 2024, and the parties ordered to meet and confer and file a joint status report by August 13, 2024.

47. Plaintiffs' counsel filed a motion to withdraw the Stipulation of FLSA Collective Certification on August 2, 2024. [Dkt. 36].

48. On August 13, 2024, Plaintiff's counsel filed a Joint Status Report on the discovery issues after discussions and a meet and confer with counsel for Defendants. [Dkt. 37]. The Court Ordered another status report be filed on August 27, 2024.

49. On August 27, 2024, after further conferral with counsel for Defendants, Plaintiff's counsel prepared and filed another Joint Status Report. [Dkt. 38].

50. Plaintiffs' counsel filed a request to extend deadlines because of the time taken to work through the discovery disputes. [Dkt. 39].

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.SunnySideLaw.com

51. On October 1, 2024, Plaintiffs' counsel prepared and filed the Second Amended Complaint to name an additional Defendant, to include allegations related to the additional Plaintiff and to include class and collective allegations. [Dkt. 43].

52. On October 31, 2024, with an expected scheduling of six depositions, Plaintiffs' counsel filed a Joint Request for Extension of Time for Deadlines. [Dkt. 46].

53. On November 18, 2024, counsel for Plaintiffs filed a Response to Defendants' Pre-Motion Conference Request on their renewed motion to dismiss. [Dkt. 48].

54. A Pre-Motion Conference was held on January 3, 2025, and Plaintiffs were ordered to file their Motion to Amend the Second Amended Complaint by January 24, 2025, with Defendants' opposition, if any, by January 31, 2025.

55. Counsel for the parties reengaged in settlement discussions, and Plaintiff's counsel filed Motions for Extension of Time to file Motion to Amend the Second Amended Complaint and Motion to Extend the Deadlines to allow time for productive settlement negotiations on January 22, 2025, February 13, 2025, February 21, 2025, which were granted by the Court. [Dkts. 51, 52, 53].

56. By Court Order of February 27, 2025, a settlement conference was scheduled for April 30, 2025.

57. On March 18, 2025, Plaintiffs' counsel filed a Third Motion to Extend Time to File Motion to Amend Complaint requesting it be filed after the settlement conference, which was granted. [Dkt. 54].

58. On April 7, 2025, counsel for Plaintiffs filed a Joint Status Report regarding the parties' settlement efforts. [Dkt. 55].

59. Plaintiffs' counsel prepared the ex parte statement in advance of the settlement conference, along with a statement to opposing counsel.

60. The settlement conference was held on April 30, 2025, with Magistrate Judge Peggy Kuo and settlement was reached.

61. Plaintiffs' counsel prepared the settlement agreement and relevant documents for approval of the settlement agreement.

62. Throughout, when Defendants provided documents and data, my firm organized and analyzed the information provided. We used this information to generate damage calculations for the Plaintiff with a reasonable amount of precision relative to the state of the record and data provided.

63. Along the way, the firm has also engaged in ongoing attempts to settle the case with defense counsel, provided status updates to the clients, reviewed the file periodically to ensure it was progressing as intended, and other similar routine tasks.

64. Future efforts are also expected to be made in this case in regard to ensuring that the settlement agreement terms are followed prior to closing the file.

**Reasonable Rates**

65. **Reasonable Rates**. As a cross check for reasonableness of the fees the parties settled upon, Plaintiff's counsel's stated rates are reasonable for this work. Stated rates are $450-$475 for the lead partner on the case, $125-195 for paralegal work depending on the nature of the work and level of experience of the paralegal, $125 per hour for client relations specialist and intake management type work. These are all consistent with market rates for the kind of work performed by the individuals whose qualifications are listed above.

66. **Fees Rulings in Other Cases.** The firm's two most recent fee awards were both for 100% of that which was requested, analyzing both the hourly rates and time expended in depth. *Kimes v. Ashalway*, 1:23-000829RMR-MDB (Jan. 31, 2025, D.Colo.); *Vassel v Littleton Auto Repair*, 1:22-cv-1229-RMR, Dkt. 30 (Dec. 19, 2024, D. Colo.). By order dated March 8, 2023, EDNY Judge Brian Cogan awarded full requested fees at our stated hourly rates, noting in part that "The services and particularly the internal intake and vetting procedures used by plaintiff's law firm were comprehensive in scope and exceed the level of due diligence often seen in these cases. Plaintiff's papers, including the instant motion, were of the highest quality." *Meehan v Brookliv,* Dkt. 39, Case No. 1:21-cv-02573 (EDNY 3/8/2023). Similarly, in a highly contested case in a Colorado state court, the judge awarded the firm fees of over $120,000, representing full grant of the firm's attorney fees motion including the hourly rates requested in this motion. *Sigler v. PS Camping Inc*. (Fremont Co. Colo., 10/31/2022). In finding the claimed fees reasonable the judge noted that, "As indicated in counsel's abbreviated biographies, both counsel [Penn Dodson and her partner, Christopher Anderson] have indicia of above average experience and reputation and the level of experience and ability base was also observed by the Court in their work, both on paper and in the courtroom.

67. **Contingency**. As this is a contingency case, we have expended resources in this case for about 2.5 years, without receiving any compensation at all for our time. While this aspect of the representation may be par for the course in plaintiff work, it also should not be overlooked, as the "time value of money" (as well as the money value of time) invested in a case of this magnitude and duration for a small firm is extremely burdensome. In order to continue to do this kind of work on behalf of workers like those at issue here it is important to make fair recoveries that take into account the time, labor, energy, and risk invested in pursuing it.

I solemnly declare that the foregoing is true and correct to the best of my knowledge, under penalty of perjury.

DATE:  July 14, 2025.

ANDERSONDODSON, P.C.

*/s/ Penn Dodson*

**Penn A. Dodson**
penn@andersondodson.com

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.SunnySideLaw.com

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK

Atty Declaration in Supp of Motion to Atty Fees
Page 8

11 Broadway, Suite 615
New York, NY  10004
(212) 961-7639
*Attorney for the Plaintiffs*

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
*www.SunnySideLaw.com*

*Shkolir et al. v. RX2GO, Inc.*
Case No. 1:23-cv-07256-OEM-PK

Atty Declaration in Supp of Motion to Atty Fees
Page 9